IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VO TRAN,<br><br>                Petitioner,<br><br>    v.<br><br>DAVID ORTIZ,<br><br>                Respondent. | Civil Action<br>No. 17-6782 (RBK)<br><br>**OPINION** |

**ROBERT B. KUGLER, U.S.D.J.**

Petitioner, Vo Tran, is a federal prisoner currently incarcerated at FCI Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Respondent filed an Answer opposing relief (ECF No. 3), and Petitioner filed a Reply (ECF No. 6). For the reasons set forth below, the Court will deny the Petition.

### I. BACKGROUND

This case arises from a disciplinary hearing during Petitioner's incarceration at FCI Fort Dix. On February of 2016, officials discovered a cell phone in Petitioner's housing unit. A forensic report of the phone revealed five contacts, four of which matched numbers on Petitioner's approved contact list. Petitioner had registered these four numbers to his parent, sibling, spouse, and attorney. Consequently, on March 10, 2016, officials issued an incident report charging Petitioner with possession of a hazardous tool, in violation of Bureau of Prisons Code 108,[1]

---

[1] Code 108 prohibits the "[p]ossession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device)." 28 C.F.R. § 541.3 (Table 1). "Aiding, attempting, abetting, or making plans to commit any of the prohibited acts is treated the same as committing the act itself." *Id*. at § 541.3(a).

delivered the report to Petitioner, and advised him of his rights. Upon receiving his rights, Petitioner stated: "none of those calls belong to me. I never had possession of that phone. The calls and dates on the incident report are not mine, I will have my family send in the phone bill to show they do not belong to me." (ECF No. 3-2, at 19).

The investigating official referred the incident report to the Unit Discipline Committee ("UDC"). The UDC then referred the incident report to a Discipline Hearing Officer ("DHO"), due to the severity of the charges and again advised Petitioner of his rights.

On April 21, 2016, the DHO held a hearing and again advised Petitioner of his rights. Petitioner confirmed that he did not want a staff representative and did not wish to call any witnesses. The DHO had postponed and rescheduled an earlier hearing, however, to provide Petitioner with time to acquire his family's cell phone records. Petitioner again stated that he did not know how the numbers wound up on the phone.

The DHO considered Petitioner's statements in reaching a decision, as well as: the incident report; the chain of custody log for the cell phone; a memorandum from the staff member who recovered the cell phone in Petitioner's housing unit; a photo of the cellphone, a forensic report detailing the contacts on the phone and call history; a system report indicating that several of the phone numbers matched the numbers on Petitioner's approved contact list; and the phone bill records from Petitioner's family. Petitioner argued that his family's phone bill records did not match the calls on the forensic report.

Among other things, the DHO found that the system report showed that several of the phone numbers at issue were *only* on Petitioner's approved phone list, rather than on any other inmates' approved list, and that officials had discovered the phone in Petitioner's housing unit. More specifically, DHO concluded, "the fact that these numbers are tied only to you in Truview

and you were assigned to the same unit where the cell phone was found shows that you had an opportunity to have these persons contacted for you or you contacted these persons." (ECF No. 3-3, at 4). The DHO also found that Petitioner's denials were not credible and that the phone records were "inconclusive," in part, because Petitioner submitted redacted phone records and failed to submit text message records. *Id*. According to Petitioner, his family redacted all or parts of the phone numbers to protect their privacy interests and that the call times, alone, were sufficient to prove his innocence.

After considering all of the evidence, the DHO concluded that Petitioner committed the act of aiding in the possession of a dangerous tool, in violation of Code 108. The DHO then issued the following sanctions: (1) revocation of forty days of good conduct time; (2) loss of email privileges for sixty days; and (3) loss of phone privileges for sixty days.

Petitioner appealed the DHO's decision, arguing, among other things, that the evidence did not support the DHO's findings and that the decision was arbitrary. More specifically, Petitioner argued that his family's phone records did not match the calls from the forensic report, and that therefore, he could not have possessed the phone, or aided in the possession thereof. At each level of appeal, Petitioner received a denial.

Petitioner then filed the instant Petition, again arguing that the DHO's decision was arbitrary. Respondent filed an Answer (ECF No. 3), and Petitioner filed a Reply (ECF No. 6).

## II. STANDARD OF REVIEW & JURISDICTION

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn,* 151 F.3d 116, 118 (3d Cir. 1998).

If the Court does not dismiss the petition at the screening stage, the Court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

Where a petitioner fails to identify evidence outside the record that would support or "otherwise . . . explain how . . . an evidentiary hearing" would advance his claim, a court is within its discretion to deny an evidentiary hearing. *Campbell*, 209 F.3d at 287. In exercising that discretion, a court must accept the truth of a petitioner's factual allegations unless the record shows that they are clearly frivolous. *Friedland*, 879 F. Supp. at 434; *c.f. United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015).

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed." *Lee v. Stickman,* 357 F.3d 338, 342 (3d Cir. 2004) (quoting *Maleng v. Cook,* 490 U.S. 488, 490–91 (1989)).

This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges the loss of good conduct time on constitutional grounds and he was incarcerated in New Jersey at the time he filed the Petition. *See Woodall v. Fed. Bureau of Prisons,* 432 F.3d 235, 242–44 (3d Cir. 2005).

## III. DISCUSSION

In this matter, Petitioner appears to only argue that the DHO's findings were arbitrary and violated his due process rights. In response, Respondent contends that Petitioner received all the required due process protections, and that in any event, there is "some evidence" to support the DHO's findings and decision.

Under our jurisprudence, before a prisoner may lose good time credits, officials must afford him the following due process protections: (1) a written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) an appearance before an impartial decision making body. *See Crosby v. Piazza,* 465 F. App'x 168, 171–72 (3d Cir. 2012) (per curiam) (citing *Wolff v. McDonnell,* 418 U.S. 539, 563–71 (1974)). Petitioner does not contest that he received these particular due process protections.

Additionally, in order to comport with due process, there must be "some evidence in the record" to support a disciplinary officer's findings and decision to revoke good time credits. *Gonzalez v. Hollingsworth*, No. 15-2993, 2016 WL 1732376, at *2 (D.N.J. May 2, 2016) (quoting *Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013)). The "some evidence" standard is one of appellate review and is not the same as the "burden of proof in a prison disciplinary proceeding." *Id*.

Indeed, the "some evidence" standard is "minimal and does not require examination of the entire record, an independent assessment of the credibility of the witnesses, or a weighing of the evidence." *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)). Instead, "the relevant inquiry asks whether 'there is any evidence

5

in the record that could support'" the disciplinary official's conclusion. *Id*. (quoting *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985).

In the present case, apart from the other evidence discussed above, the DHO found that several of the numbers on the phone's logs matched numbers on Petitioner's approved contact list. Petitioner does not contest that these numbers belong to his family members and attorney, and in fact, provided phone bills confirming the matches. The DHO further noted that these phone numbers did not appear on any other inmates' approved contact list.

While officials did not find the cell phone in question within Petitioner's possession, "courts have found that the presence . . . of a number which *only* appears on a particular inmate's approved phone list constitutes 'some evidence' that such inmate possessed the cell phone in question." *See, e.g.*, *Gonzalez*, 2016 WL 1732376, at *2 (citing *Burns v. Hollingsworth*, No. 13-5485, 2014 WL 1117932, at *2 (D.N.J. Mar. 20, 2014) (collecting cases)).

Petitioner does not contest this particular evidence in his Petition, and thus, has "failed to show that the DHO's decision lacked 'some evidence'" to support his findings. *Burns*, 2014 WL 1117932, at *2. Indeed, evidence that officials found several numbers on the phone that only matched contacts on Petitioner's approved list, coupled with Petitioner's confirmation that the numbers belonged to his approved contacts, are enough to meet the minimally stringent "some evidence" standard that Petitioner aided[2] the possession of a hazardous tool. *Cf. id*.

---

[2] The Court finds that the evidence led the DHO to the natural conclusion, that Petitioner must have used the phone in some way or directed another to use the phone. Petitioner simply fails to offer any other colorable explanation as to why his approved contacts were on the phone. To the extent Petitioner alleges, *in his Reply*, that Respondent somehow fabricated the forensic report because of its inconsistencies with his family's phone records, the Court addresses that point below. *See infra* note 3.

Consequently, whether Petitioner personally made the calls and texts to his approved contacts, as well as whether the forensic report time stamps match his family's phone records,[3] do not change the conclusion that the DHO had "some evidence" to arrive at his decision. As a result, the DHO's decision was not arbitrary. Ultimately, Petitioner asks the Court to reweigh the evidence, but that is not the duty of this Court when reviewing a DHO's decision to revoke good time credits. *See Lang*, 529 F. App'x at 123. Accordingly, the Court will deny the Petition.

## IV.  CONCLUSION

For the foregoing reasons, Court will deny the Petition. An appropriate Order follows.

DATED: August 21, 2019

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

---

[3] Although not necessary to the Court's disposition, the Court agrees with the DHO's finding that Petitioner's phone bill records were "inconclusive." (ECF No. 3-3, at 4). Apart from the redactions, the Court observes that the forensic report appears to list calls and texts based on the Universal Time Coordinated "UTC+0" time zone. (ECF No. 3-4, at 4). From Petitioner's arguments, he appears to have assumed that the forensic report used Eastern Standard Time UTC-4, rather than UTC+0.

In contrast, Petitioner's phone records, based on area code, may have recorded times from three different United States time zones anywhere from UTC-4 to UTC-7. It is also unclear, as to whether the phone records display time based on a person's current location when receiving a call, or simply where they registered for the phone service (if for example, a person registered in Illinois but was presently in New Jersey when taking a call). Without substantially more information, the Court rejects Petitioner's argument, that the phone records present a "factual impossibility" and his conclusion that someone must have "fabricated" the forensic report. (ECF No. 1, at 9; ECF No. 6, at 5). Additionally, the Court rejects Petitioner's intentional fabrication argument, as he improperly raised it for the first time in his Reply. *See, e.g.*, *Still v. Hastings*, No. 13-6226, 2015 WL 3934937, at *3 (D.N.J. June 26, 2015) (concluding that a litigant cannot plead claims or raise new facts in support in a non-pleading document, such as reply in a habeas petition).